***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is American Home Assurance Company.
4. The employee's average weekly wage is $315.56 per week.
5. The parties entered the follow into evidence at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — Packet of Industrial Commission forms, discovery responses, employment records and other documents.
b. Stipulated Exhibit 2 — medical records
c. Defendants' Exhibit 1 — Janet Rooney's statement
d. Defendants' Exhibit 2 — LaTonya Taylor's statement
e. Defendants' Exhibit 3 — Ken Ellis's statement
6. An affidavit by Carlos C. Bigler, Jr. submitted July 7, 2003 is also a part of the evidence.
7. The Pre-Trial Agreement dated January 3, 2003, which was submitted by the parties, is incorporated by reference.
8. The depositions and records of Dr. Olcott and Dr. Barsanti are a part of the evidence of record.
9. The issue before the Commission is whether plaintiff sustained an injury by accident, and if so, to what compensation is he entitled.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty-three years old at the time of the hearing before the Deputy Commissioner. Plaintiff completed the eighth grade and later obtained his GED. In May 2000, plaintiff began working for defendants in the tire mount department. His job duties included replacing tires on customers' vehicles, balancing and rotating tires, replacing batteries, stocking and assisting customers.
2. On an unknown date in March or April 2001, plaintiff brought tires for a small truck into the bay area where he was working. When he turned away from them, one of the tires fell over against his left knee jolting his leg and causing him to experience pain in his left knee.
3. Plaintiff had long standing problems with his left knee beginning with an injury in 1977 while playing basketball. Following that injury, plaintiff had undergone surgery to remove cartilage in his knee. He recovered well from the surgery and was able to be active and work, but he could no longer play basketball.
4. Over the subsequent years, plaintiff developed osteoarthritis in the left knee. A doctor at the Veterans' Administration hospital saw him approximately five years before the accident in 2001 and told him that he would eventually require knee replacement surgery.
5. Following plaintiff's accident at work, he told Carlos Bigler, a co-worker, about the injury, and Mr. Bigler called the department manager, Lillian Ladet, who came to the area. Plaintiff then told Ms. Ladet what had happened and how he had hurt himself. Although Ms. Ladet was his supervisor for that shift, she did not fill out an accident report at that time, possibly because plaintiff was confident that, since he had a preexisting condition, the injury would not be covered by workers' compensation.
6. The next day plaintiff called to get an appointment with Dr. Barsanti, an orthopedic surgeon in Greenville. The earliest available appointment was not until May 21, 2001. In the meantime, plaintiff used a knee brace and continued working his regular job.
7. When plaintiff gave his medical history to Dr. Barsanti's physician's assistant on May 21, 2001, he described the tire incident but indicated that he did not plan to file for workers' compensation. The incident was not noted in the medical record for that day. Dr. Barsanti did not discuss plaintiff's medical history with him but did examine him and reviewed his x-rays.
8. Dr. Barsanti concluded plaintiff had obvious varus deformity to the knee and the x-rays revealed moderate to advanced osteoarthritis with complete obliteration of the medial joint space. Dr. Barsanti discussed treatment options with plaintiff, who decided that he was ready to have knee replacement surgery. The operation was scheduled for August 23, 2001 and plaintiff was restricted to only light-duty work prior to that time.
9. Defendants would not provide light-duty work for plaintiff, so he was out of work until he had the knee replacement surgery on August 23, 2001. Following the operation, he did poorly with high levels of pain and limitation of motion of the joint. A flexion contracture developed and Dr. Barsanti decided that the knee should be manipulated under anesthesia. That procedure was performed twice, but plaintiff remained quite symptomatic.
10. On November 28, 2001, plaintiff went to Dr. Olcott, an orthopedic surgeon in Wilmington, for another opinion. Dr. Olcott ran tests to rule out the possibility of an infection and checked whether the implant had loosened. The doctor then determined that the joint had a very tight extension gap, which was causing loss of motion. Surgery to revise the knee replacement could not be performed until after six months had elapsed from the original procedure, but on February 28, 2002 Dr. Olcott performed the operation in which he removed the joint previously inserted and installed new components.
11. Plaintiff's condition improved considerably after the revision surgery and he tended to overdo activities somewhat because he was so relieved to be feeling better. By the time of his last office visit with Dr. Olcott on August 26, 2002, his range of motion had improved and he was able to play golf. However, Dr. Olcott did not want him to ambulate for prolonged periods or lift heavy weights and instructed him to not squat or kneel.
12. Plaintiff could not return to work in his former position with defendants. As of August 26, 2002, plaintiff was not at maximum medical improvement and was supposed to return to Dr. Olcott in February 2003, but he had lost his health insurance by that time. Plaintiff could not afford the fees associated with another medical visit, so he had not returned to Dr. Olcott as of the date of the doctor's deposition.
13. Following his injury at work, plaintiff filed his medical bills on his group health insurance and submitted a claim for short term disability benefits because he believed that his preexisting condition prevented him from qualifying for workers' compensation benefits. However, after the insurance companies raised workers' compensation as a defense to his short term and long term disability claims, he decided to pursue workers' compensation benefits and filed this claim.
14. The Full Commission finds on an unknown date in March or April 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendants. The fact that a tire fell against his leg constituted an unusual occurrence which interrupted his regular work routine. However, Dr. Barsanti could find no evidence of an acute injury when he saw plaintiff on May 21, 2001 and, when apprised of the incident, Dr. Barsanti was of the opinion that the accident did not make the preexisting osteoarthritis worse. Rather, the incident was probably not of consequence regarding the progression of the osteoarthritic condition which led to plaintiff's disability and knee replacement surgery. When Dr. Olcott was questioned about the issue, he had no opinion since he had not seen plaintiff until after plaintiff had already had knee replacement surgery.
15. Consequently, plaintiff did not prove by the greater weight of the evidence that the left knee condition for which he was treated beginning on May 21, 2001 was a proximate result of his injury at work. The accident was not shown to have materially aggravated his preexisting condition. Although plaintiff sustained an injury by accident at work, there were no compensable consequences proven to have resulted from the injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On an unknown date in March or April 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. However, the left knee condition for which plaintiff was treated beginning May 21, 2001 was not proven to have been a proximate result of the injury in question since the evidence did not establish that his preexisting osteoarthritis was materially aggravated by the accident. N.C. Gen. Stat. § 97-2(6); Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980).
3. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his left knee condition. N.C. Gen. Stat. §97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and hereby is DENIED.
2. Each side shall pay its own costs.
This the ___ day of March 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd